| | |
|---|---|
| UNITED STATES DISTRICT COURT | |
| EASTERN DISTRICT OF CALIFORNIA | |
| ----oo0oo---- | |

| | |
|---|---|
| LINGLONG AMERICAS INC., | Civ. No. 2:17-1378 WBS GGH |
| Plaintiff, | |
| v. | MEMROANDUM AND ORDER RE: MOTION TO DISMISS SECOND AMENDED COUNTERCLAIM |
| GET IT ON WHEELS, INC. (d/b/a TIRE & WHEEL OUTLET) and DOES 1-5, inclusive, | |
| Defendants. | |

----oo0oo----

Plaintiff Linglong Americas Inc. ("Linglong") brought this action against defendant Get it on Wheels, Inc. doing business as Tire & Wheels Outlet ("Tire Outlet") for damages arising from unpaid invoices for tires that Linglong delivered to Tire Outlet. (Compl. ¶¶ 11, 28 (Docket No. 1).) Before the court is plaintiff's Motion to dismiss defendant's Second Amended Counterclaim for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Pl.'s Mot. (Docket No. 37).)

1

I.  Factual and Procedural Background

On September 6, 2017, defendant filed a Counterclaim against plaintiff alleging a breach of the implied covenant of good faith and fair dealing. (Def.'s Countercl. ¶ 12-14 (Docket No. 15).) In its initial Counterclaim, defendant alleged plaintiff violated the implied covenant of good faith and fair dealing by selling to defendant's wholesale competitors without advance discussion or warning, after plaintiff had not sold to others in defendant's market area when the contractual relationship began. (Id. ¶¶ 9-14.) Plaintiff moved to dismiss the Counterclaim (Docket No. 17) and the Motion was scheduled to be heard on November 13, 2017. On November 12, 2017, defendant filed a Motion to Amend the Counterclaim (Docket No. 24), which the court granted on November 14, 2017 (Docket No. 27.).

In its Amended Counterclaim defendant re-characterized its Counterclaim, stating that the companies understood that defendant was not to be undersold in its market area. (Def.'s Am. Countercl. ¶¶ 12-14 (Docket No. 24-3).) In its Order grating plaintiff's Motion to dismiss the Amended Counterclaim, the court noted that defendant left the court guessing as to whether it was alleging that plaintiff or plaintiff's parent corporation, who is not a party in the action, undersold the tires. (Order Granting Mot. Dismiss at 6-7 (Docket No. 33).) To the extent the Amended Counterclaim was asserted against plaintiff's parent corporation, the court dismissed the Amended Counterclaim. (Id. at 7.) To the extent the Amended Counterclaim was asserted against plaintiff, the court held that defendant had not sufficiently alleged that by selling to its competitors at a lower price,

2

plaintiff deprived defendant of an established contractual benefit. (Id. at 8-9.) Accordingly, the court dismissed defendant's Amended Counterclaim. (Id.)

Defendant has now filed a Second Amended Counterclaim asserting for the first time a claim of breach of contract as well as a claim of breach of the implied covenant of good faith and fair dealing. (Second Am. Countercl. ("SAC") at 4-5 (Docket No. 36).) In the Second Amended Counterclaim, defendant alleges that in February of 2016 the companies entered into an oral contract. (Id. ¶ 8) Under the agreement, plaintiff would provide wholesale tires to defendant that defendant could then resell. (Id. ¶ 9) The parties also allegedly agreed that so long as minimum purchase requirements were met, plaintiff would not sell tires to defendant's competitors in the northern California market. (Id.) Despite the agreement, defendant alleges plaintiff began selling directly to defendant's wholesale competitors within its market area. (Id. ¶ 12). When defendant inquired into the competing sales, plaintiff assured defendant that no such competing sales were being made. (Id.) Despite the assurances, defendant learned plaintiff was selling to defendant's competitors at a discounted price. (Id. ¶ 13.) After further inquiry, defendant was informed by plaintiff that the sales were being done "behind the back" of plaintiff by plaintiff's parent corporation. (Id. ¶ 14.) Defendant alleges that plaintiff falsely stated that the sales were made by plaintiff's parent corporation, when in fact the competing sales were made by plaintiff. (Id. ¶ 15.)

For the first time, defendant argues that the parties

had an "exclusivity portion of the oral contract," and that plaintiff's sales to defendant's market competitors breached their contract. (Id. ¶¶ 19, 20). By selling tires to its market competitors at a lower price, defendant alleges it was deprived of the benefit of which it was entitled under the contract, and thus, plaintiff's conduct breached the covenant of good faith and fair dealing. (Id. ¶ 25.)

II. Legal Standard

"A motion to dismiss a counterclaim brought pursuant to FRCP 12(b)(6) is evaluated under the same standard as motion to dismiss a plaintiff's complaint." PageMelding, Inc. v. ESPN, Inc., Civ. No. 11-6263 WHA, 2012 WL 3877686, at *1 (N.D. Cal. Sept. 6, 2012). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). In deciding whether a plaintiff has stated a claim, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).

4

III. Discussion

    A.    Judicial Estoppel and Breach of Contract

Plaintiff contends that defendant's inconsistent positions--repeatedly representing to the court that it was not attempting to have the court imply an exclusivity term into the contract and now bringing a breach of contract claim against plaintiff for breach of the exclusivity portion of the oral contract--justify the application of judicial estoppel to bar defendant's breach of contract claim. (Pl.'s Mem. of P. & A. at 6 (Docket No. 37).)

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001). The Ninth Circuit invokes judicial estoppel "not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'" Id. (quoting Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990).)

"On the other hand, the judicial estoppel doctrine is to be applied with caution." Mull v. Motion Picture Indus. Health Plan, Civ. No. 12-6693-VBF-MAN, 2014 WL 1514812, at *17 (C.D. Cal. Feb. 4, 2014) (citation omitted). "Judicial estoppel is an extraordinary remedy . . . [and] [i]t is not meant to be a technical defense for litigants seeking to derail potentially

meritorious claims." Id. (citations omitted).

The decision to impose judicial estoppel is within the discretion of the district court, see Baughman v. Walt Disney World Co., 685 F.3d 1131, 1133 (9th Cir. 2012), and is "driven by the specific facts of a case." Johnson v. State, Oregon Dep't of Human Res., Rehab. Div., 141 F.3d 1361, 1368 (9th Cir. 1998) (citations omitted). In order to apply judicial estoppel, the court must determine that: "(1) the party to be estopped asserted an earlier position that is 'clearly inconsistent' with a position it later attempts to assert; (2) the court relied on the earlier position; and (3) allowing the party to change its position would be inequitable." Cox v. Cont'l Cas. Co., 703 F. App'x 491, 494 (9th Cir. 2017).[1]

The court first considers whether defendant's positions are "clearly inconsistent." In its initial and Amended Counterclaim, defendant only brought a claim for breach of the

---

[1] Defendant argues that plaintiff's citation to Cox should be disregarded as the case was not selected for publication. (Def.'s Opp'n at 3.) However, pursuant to Ninth Circuit's Federal Rules of Appellate Procedure 36-3, while "unpublished dispositions and orders of [the Ninth Circuit] are not precedent . . . unpublished dispositions and orders of this Court issued on or after January 1, 2007 may be cited to the courts of this circuit." Fed. R. App. P. 36-3. Accordingly, plaintiff may cite the Cox decision. Moreover, the test is similar to the test articulated in Hamilton. See Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001) (quoting New Hampshire v. Maine, 532 U.S. 742 (2001)). In Hamilton, the Ninth Circuit stated that there are several factors the court considers when determining whether to apply judicial estoppel: (1) whether a party's later position must be "clearly inconsistent" with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. Id.

implied covenant of good faith and fair dealing.  In its Second
Amended Counterclaim, defendant also brings a breach of contract
claim.

In its opposition to plaintiff's Motion to dismiss
defendant's initial Counterclaim, and in its subsequent
opposition to defendant's Motion to Amend the Counterclaim for
breach of the implied covenant of good faith and fair dealing,
defendant expressly stated that it was not asking the court to
imply an exclusivity term in the oral contract; rather, defendant
asserted that plaintiff did not deal with defendant fairly in
their distribution agreement.  (Def.'s Opp'n ("Initial Opp'n") at
2 (Docket No. 22); (Def.'s Opp'n ("First Am. Opp'n") at 2 (Docket
No. 29.).)  Additionally, defendant recognized that it could not
ask the court to imply an exclusivity term into the oral
distributor agreement.  (Initial Opp'n at 4; First Am. Opp'n at
3; see Walnut Creek Pipe Distribs., Inc. v. Gates Rubber Co.
Sales Div., 228 Cal. App. 2d 810, 816 (1st Dist. 1964) ("One of
the most commonly rejected covenants, regardless of hardship, is
the implication that a distributorship agreement is exclusive
where not so specified.") (citations omitted).

In contrast to its earlier arguments, defendant now
contends that plaintiff breached the exclusivity portion of the
oral contract by selling to defendant's market competitors.  (SAC
¶¶ 19-20.)  Defendant's assertion that its Counterclaims are
based on an exclusive distributorship contract is not "clearly
inconsistent" with its earlier assertions that it was not asking
the court to imply an exclusivity term within the contract
because defendant never represented to the court that the

contract did not contain an exclusivity term. Rather, defendant did not previously allege breach of contract, it simply recognized that it could not ask the court to imply an exclusivity term in a contract. In other words, defendant's arguments are not inconsistent with one another; defendant is simply presenting a new argument for the first time.

Moreover, defendant is "able to justify its change of position by pointing to new facts it has discovered which show or at least suggest" that there was an exclusivity term in the contract. See Mull, 2014 WL 12639071, at *15. Here, defendant's counsel states that it was not aware that there was both a breach of contract claim and the previously asserted breach of the implied covenant of good faith and fair dealing until meeting with defendant's representative in conjunction with preparing the Initial Disclosures. (Second Am. Opp'n at 2 (Docket No. 40).) Defense counsel explains that because of language difficulties in communicating with his client's representative, prior to his recent meeting he did not have reason to understand that the oral contract contained an exclusivity term. Therefore, defendant's positions are not "clearly inconsistent," and defendant's counsel is able to explain why it is just now bringing a breach of contract claim.

The court next considers whether it has relied on defendant's earlier position. In other words, "[c]ourts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second

8

court was misled." New Hampshire v. Maine, 532 U.S. 742, 750 (2001) (citation omitted). "Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations." Id. at 750-51 (citation and internal quotations omitted).

Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." Zedner v. United States, 547 U.S. 489, 504 (2006). While the court in its January 4, 2018 Order, relied upon defendant's assertion that it was not asking the court to imply an exclusivity term in the contract, defendant was ultimately unsuccessful and the court dismissed the Counterclaim. Thus, given the defendant did not previously prevail, the court determines that judicial estoppel is not appropriate here.

Lastly, the court considers whether allowing defendant to change its position would be inequitable. The court notes that this is defendant's third attempt to state a Counterclaim. However, the court dismissed defendant's Amended Counterclaim with leave to amend, to the extent it could do so consistent with the court order. Moreover, the court cannot unequivocally say, especially in light of counsel's representations, that the change in position is an "unsubstantiated and apparently unjustified change in position." See Mull, 2014 WL 12639071, at *16; see also Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC, 692 F.3d 983, 995 (9th Cir. 2012) (stating "chicanery or knowing misrepresentation by the party to be estopped is a factor to be considered in the judicial estoppel analysis.") In addition,

plaintiff will have the opportunity later in this litigation to
present evidence and dispute the terms of the oral contract.

For all the above mentioned reasons, the court will not
apply judicial estoppel at this stage of the proceedings. Thus,
defendant may assert a Counterclaim for breach of contract.

B. <u>Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

Defendant bases its claim for breach of the implied
covenant of good faith and fair dealing on the theory that
plaintiff was somehow not permitted to sell to defendant's
competitors at lower prices than those offered to defendant.
Plaintiff argues that defendant is precluded from bringing this
claim pursuant to <u>Lee v. Gen. Nutrition Cos., Inc.</u>, Civ. No. 00-
13550 LGB (AJWX), 2001 WL 34032651 (C.D. Cal. Nov. 26, 2001).
(Pl.'s P. & A. at 9.)

In <u>Lee</u>, plaintiffs claimed that defendant breached the
implied covenant of good faith and fair dealing by placing
competing stores in close proximity to plaintiff's GNC store and
selling GNC-brand products at lower wholesale prices to competing
stores, on the internet, and to Rite Aid Stores. <u>Id.</u> at *8.
However, the conduct alleged was authorized by the contracts
formed between the parties, and defendants pointed to a provision
included in the agreement that "bars Defendants from operating or
granting another the right to operate a GNC-store within the
protected territory but reserves to Defendants all rights outside
the protected territory." <u>Id.</u> The <u>Lee</u> court recognized that
under California law, a plaintiff could not "use a claim for
breach of the implied covenant of good faith and fair dealing to

modify or override the contractual terms or to prohibit a defendant from doing what they were contractually permitted to do." Id. at *9. Accordingly, the court in Lee dismissed plaintiff's claim for breach of the implied covenant of good faith and fair dealing because defendant's conduct was authorized by the agreement between the parties.

Thus, Lee does not prohibit defendant from asserting a Counterclaim for breach of the implied covenant of good faith and fair dealing under the circumstances alleged here. In this case, defendant is alleging that plaintiff deprived defendant of the benefit to which it was entitled under the contract--exclusive sales in the northern California market. Unlike the plaintiff in Lee, defendant is not attempting "to modify or override the contractual terms or to prohibit a defendant from doing what they were contractually permitted to do." Rather, defendant is in fact seeking to enforce the contractual terms. Thus, Lee is inapplicable.[2]

Plaintiff also argues that there are no new factual allegations in the Second Amended Counterclaim that support defendant's assertion that there was an oral agreement of exclusivity. However, defendant now asserts, for the first time, that an oral exclusivity agreement, which substantially changes the allegations of the Counterclaim.

For the foregoing reasons, Lee does not prohibit defendant's claim for breach of the implied covenant of good

---

[2] Even if Lee did stand for the proposition that plaintiff alleges, it is an unpublished Central District of California case and as such is not binding on this court.

11

```
 1  faith and fair dealing as a matter of law.
 2           IT IS THEREFORE ORDERED that plaintiff's Motion to
 3  dismiss defendant's Second Amended Counterclaim (Docket No. 37)
 4  be, and the same hereby is, DENIED.
 5
 6  Dated:  March 20, 2018
 7                                  WILLIAM B. SHUBB
                                    UNITED STATES DISTRICT JUDGE
 8
```